IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOYCE COLE                                                                                    PLAINTIFF

v.                              CIVIL NO. 5:16-CV-5156

NANCY A. BERRYHILL,[1] Acting Commissioner,
Social Security Administration                                                           DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Joyce Cole, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed her current application for SSI on May 20, 2011, alleging an inability to work since May 1, 2011, due to the following conditions: chronic obstructive pulmonary disease (COPD), bilateral carpal tunnel syndrome, and back problems. (Tr. 245, 248). An administrative hearing was held on September 18, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 31-58). On May 31, 2013, the ALJ issued a decision denying benefits. (Tr. 90-102). The Appeals Council remanded the case back to the ALJ for further

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

consideration on May 9, 2014. (Tr. 108-111). A second administrative hearing was held on September 22, 2014, at which Plaintiff also appeared with counsel and testified. (Tr. 59-85).

On January 13, 2015, the ALJ issued a written opinion, finding that the Plaintiff had severe impairments of COPD, obesity, degenerative disc disease, and major depressive disorder. (Tr. 15). After reviewing the evidence in its entirety, the ALJ determined that the Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Tr. 16-17). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 416.967(a) except the claimant must avoid concentrated exposure to pulmonary irritants like dusts, odors, etc.; the claimant can only occasionally climb, balance, crawl, kneel, stoop, and/or crouch; the claimant can perform simple, routine, repetitive tasks, in a setting where interpersonal contact is incidental to the work performed, and can respond to supervision that is simple, direct, and concrete.

(Tr. 18-24). The ALJ propounded interrogatories to the vocational expert (VE), and through her responses the ALJ determined that Plaintiff was capable of performing work as a surveillance system monitor, addressing clerk, or photo copy document preparer. (Tr. 24-25).

Subsequently, on March 18, 2015, Plaintiff requested review by the Appeals Council of the hearing decision. (Tr. 5-8). The Appeals Council denied her request on April 21, 2016. (Tr. 1-4). Plaintiff then filed this action on June 24, 2016. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have submitted briefs, and the case is now ready for decision. (Docs. 13, 14).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

**III.    Discussion:**

Plaintiff makes the following arguments on appeal: 1) that the ALJ erred failing to fully and fairly develop the record; 2) that the ALJ erred in his credibility determination; 3) that the ALJ erred in his RFC determination; and 4) that the ALJ erred in disregarding the opinions and findings of the primary treating physician, Dr. Routsong. [2]  (Doc. 13, pp. 5-13).

### A.    Full and Fair Development of the Record:

Plaintiff argues that the ALJ erred in failing to fully develop the record in that he failed to order a consultative neurological examination in order to further evaluate Plaintiff's alleged carpal tunnel syndrome. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011,

---

[2] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of physical RFC assessments completed by non-examining medical consultants and Plaintiff's medical records, which include clinic notes from a neurologist, hospital records, and imaging results. Moreover, the medical evidence showed that Plaintiff merely reported that she had a history of carpal tunnel syndrome, that she had not undergone any testing specifically for carpal tunnel syndrome, and that she did not seek or receive any aggressive medical treatment for carpal tunnel syndrome. Furthermore, Plaintiff failed to submit additional evidence of a consultative examination at either hearing before the ALJ or at the Appeals Council phases of the case. After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B. Combination of Impairments:

Plaintiff argues that the ALJ erred in failing to consider all of her impairments in combination. The ALJ stated that in determining Plaintiff's RFC, he considered "all of the claimant's impairments, including impairments that are not severe." (Tr. 14). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in Appendix I, Subpart P, Regulation

No. 4. (Tr. 16-17). Such language demonstrates the ALJ considered the combined effect of Plaintiff's impairments. Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

### C.   Subjective Complaints and Symptom Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The record reflects that Plaintiff completed a Function Report on December 6, 2011, wherein she reported that she cared for her pets by feeding, watering, and letting them inside and outside; was able to care for herself, although there were days that she did not dress or shower; prepared simple meals; washed dishes; and washed clothes. (Tr. 293-295). She also reported that she could drive a car short distances, ride in a car, shop in stores for food, pay bills, count change, handle a savings account, and use a checkbook or money order. (Tr. 296-297). She stated that she enjoyed watching television, that she spent time with her roommates, and that she talked to her mother on the telephone. (Tr. 297).

6

With respect to Plaintiff's back pain and COPD, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication and other conservative measures. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). See also Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (if an impairment can be controlled by treatment or medication it cannot be considered disabling).

The record also revealed that on at least two occasions, Plaintiff reported that she was not taking her medication as prescribed for her COPD. (Tr. 417, 556). Furthermore, Plaintiff's medical providers repeatedly recommended that Plaintiff stop smoking and despite these recommendations, Plaintiff continued to smoke throughout the relevant time period. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir.1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits). This is not a case in which the correlation between Plaintiff's smoking and one of Plaintiff's impairments is not readily apparent. Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) (citations omitted). To the contrary, there is no dispute that smoking has a direct impact on Plaintiff's pulmonary impairment.

Moreover, based on Plaintiff's medical records, Plaintiff was not consistent in seeking medical attention and would go months without seeing a physician. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability); See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). When Plaintiff did seek medical treatment, as noted

above, she was treated conservatively and appeared to experience some relief with the use of medication.

With respect to Plaintiff's alleged mental impairments, the record fails to establish that Plaintiff sought on-going and consistent treatment from a mental health provider. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability). Furthermore, Plaintiff did not allege that depression or anxiety were disabling impairments in her application documents, which is significant, even if the evidence of such was later developed. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).

To the extent that Plaintiff asserts that she was unable to seek treatment for her physical or mental conditions due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Further, the Court reiterates that Plaintiff's medical records indicated that Plaintiff was able to support her smoking habit of more than thirty cigarettes per day, during the relevant time period, while being counseled on tobacco cessation. (Tr. 412, 417, 418, 498, 499, 502, 504, 506, 557, 577, 580).

With regard to the statement by Plaintiff's roommate, Geneva Dobbs, the ALJ properly considered this evidence, but found it unpersuasive. This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

While it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

D. **The ALJ's RFC Determination and Medical Opinions:**

RFC is the most a person can do despite that person's limitations. See 20 C.F.R. § 416.945(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. See 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. See Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. § 416.927(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Wagner v. Astrue, 499

F.3d 842, 848 (8th Cir. 2007), citing Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight ... [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship; (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and, (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. § 416.927(c). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." Id. at § 416.927(c)(2) (emphasis added).

In finding Plaintiff able to perform light work, the ALJ considered Plaintiff's subjective complaints and the medical records of her treating, examining and non-examining physicians. Specifically, the ALJ addressed the relevant medical records, and the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010, 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

In her argument, Plaintiff alleges that the ALJ failed to give proper weight to the opinion of Dr. Rodney Routsong and failed to incorporate Dr. Routsong's findings into the RFC determination. The ALJ noted that Dr. Routsong's opinion did not contain any evidence upon which he could conclude that Plaintiff suffered for years with her conditions (other than Plaintiff's own subjective report) and did not contain any evidence to support his conclusion that Plaintiff's conditions were inoperable. (Tr. 23). The Court points out that the medical record contains only one document from Dr. Routsong. (Tr. 584-585). In that document, Dr. Routsong noted Plaintiff's history of low back pain, COPD and headaches; that Plaintiff had suffered from these problems for several years; that her problems had not resolved with treatment; and that surgery would not help. (Tr. 584). The document did not reference any diagnostic testing and as the ALJ noted, his conclusions appeared to be based on Plaintiff's subjective complaints. A few months prior to Dr. Routsong's report, Dr. Brian Bracy examined Plaintiff and his treatment notes reflected that Plaintiff's cervical spine inspection revealed normal findings and that an x-ray of Plaintiff's cervical spine revealed no deformities. (Tr. 575, 577, 580). His treatment notes further indicated that Plaintiff appeared comfortable, exhibited a normal gait, exhibited no deformities in her extremities, and exhibited no cyanosis, clubbing or edema. (Tr. 574-582). In addition, Dr. Bracy noted and that Plaintiff's examination revealed normal tone and strength and that Plaintiff's COPD seemed well controlled with medication. (Tr. 574-582).

"Because [Dr. Routsong's] determination contradicted other objective evidence in the record, the ALJ's decision to give less weight to [Dr. Routsong's] determination was reasonable." Renstrom, 680 F.3d at 1066 (citing Partee v. Astrue, 638 F.3d 860, 864 (8th Cir. 2011). See also Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) ("[W]hen a treating

11

physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight.") (internal quotation marks and citation omitted).

The ALJ also discussed the findings of the mental assessments of the non-examining medical consultants and gave them some weight based on Plaintiff's admitted ability to attend medical appointments, drive for short distances, and shop in stores for food on a regular basis. (Tr. 23). The ALJ also discussed and gave great weight to examining consultant, Dr. Terry Efird, and his Mental Diagnostic Evaluation, where he opined that Plaintiff could communicate in a reasonably intelligible and effective manner; had the capacity to perform basic cognitive tasks required for work-like activities; had the mental capacity to persist with tasks if desired; and appeared to have the capability of completing work like tasks within a reasonable time frame. (Tr. 464). The ALJ also provided some weight to the physical assessments by the non-examining medical consultants; however, the ALJ ultimately determined that Plaintiff was more limited based upon additional evidence entered in to the record after the opinions were rendered. (Tr. 23). See Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (The ALJ has the responsibility to determine which findings are inconsistent and which opinions should be given greater weight than other opinions.).

The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform sedentary work with limitations. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### E. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a surveillance system monitor, an addressing clerk, and a photo copy document preparer. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 12th day of September, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE